FILED
2026 MAR 10 PM 3:40
CLERK
U.S. DISTRICT COURT

Gregory Miller
2476 E. Cardinal Way
Cottonwood Heights, UT 84121
801.808.7893
gmiller0125@gmail.com

*Plaintiff*

---

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| GREGORY MILLER,<br><br>        Plaintiff,<br><br>vs.<br><br>GYM AND FITNESS, INC., a Utah corporation;<br><br>GYM AND FITNESS CO, an Australian company; and<br><br>NET MEDIA GROUP, LLC, a Utah limited liability company,<br><br>        Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>    Case: 2:26−cv−00203<br>    Assigned To : Bennett, Jared C.<br>    Assign. Date : 3/10/2026<br>    Description: Miller v Gym and Fitness et al<br>Case No. _____<br><br><br>Judge _____ |

Plaintiff Gregory Miller hereby complains of Defendants Gym and Fitness, Inc., Gym and Fitness, Co., and Net Media Group, LLC, for causes of action and alleges as follows:

### PARTIES

1.      Plaintiff Gregory Miller ("Plaintiff" or "Miller") is an individual who resides in Salt Lake County, Utah.

2.      Defendant Gym and Fitness, Inc. ("America") is a corporation formed and

1

existing under the laws of Utah with its principal place of business located at 13702 S 200 W, Draper, Utah 84020 in Salt Lake County, Utah.

3.      Defendant Gym and Fitness, Co. ("Australia") is a company formed and existing under the laws of Australia with its principal United States place of business located at 13702 S 200 W, Draper, Utah 84020 in Salt Lake County, Utah.

4.      Defendant Net Media Group, LLC ("Net Media Group") is a limited liability company organized and existing under the laws of Utah with its principal place of business located at 13702 S 200 W, Draper, Utah 84020 in Salt Lake County, Utah

## JURISDICTION AND VENUE

5.      This is a cause of action for gender and national origin discrimination as prohibited by Title VII of the Civil Rights Act of 1964.  This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).

6.      Venue is proper in this Court pursuant to 28 U.S. C. § 1391(b) and 42 U.S.C. § 2000e-5(f).

## GENERAL ALLEGATTIONS

**I.      Defendants Are an Integrated Enterprise and Single Employer.**

7.      Australia owns a brand called "Force USA."

8.      Between October 15, 2024 and October 22, 2024, Miller interviewed for the Director of Finance position with America.

9.      The America executives and employees with whom Miller interviewed communicated through Force USA email addresses.

10. Australia's executives and employees were as involved in Miller's interview process as America's executives and employees.

11. On October 24, 2024, Miller accepted America's offer of employment as its Director of Finance.

12. Throughout the time of Miller's employment with America, all or substantially all of America's business operations involved the sale of Force USA products purchased from Australia.

13. Throughout Miller's employment with America, all or substantially of America's revenue was generated by the sale of Force USA products purchased from Australia.

14. Throughout Miller's employment with America, all or substantially all of the inventory purchased from Australia by America that was not shipped directly to customers was stored in one or more warehouses located in Salt Lake County, Utah.

15. Throughout Miller's employment with America, Australia engaged in significant vendor financing on behalf of America.

16. Throughout Miller's employment with America, at least 50% of America's stock was owned by Australia.

17. Throughout Miller's employment with America, the remainder of America's stock was owned by Net Media Group.

18. Throughout Miller's employment with America, Net Media Group was owned by three individuals: Mark Swaby, Nate Daily and Ryan Wheaton.

19. Throughout Miller's employment with America, each of Swaby, Daily and Wheaton were employed as executives for America.

3

20. Throughout Miller's employment with America, Australia dictated the work product and priorities of America's executives and staff.

21. During Miller's employment with America, Australia CEO Steven Goltman visited America's Utah office location.

22. While on site in Utah, Mr. Goltman dictated the work product and priorities of America's executives and staff. Goltman openly criticized, corrected and issued orders to Swaby, Daily and Wheaton.

23. Throughout Miller's employment with America, Australia exercised control over America's hiring, retention and termination of staff.

24. At the date of this complaint, Net Media Group's website indicates that the company is a "wholesale distributor, online retailer, or equity stake partner" for Force USA.

25. Although Miller's post-termination claim for unemployment insurance benefits named Gym and Fitness, Inc. ("America") as his employer, the Utah Division of Workforce Services ("DWS") processed the claim under the account of Net Media Group.

26. Defendants America, Australia and Net Media Group collectively employed more than fifteen employees for more than twenty weeks in the calendar years of and preceding Miller's employment as Director of Finance.

## II. Defendants' Justifications for Terminating Miller Are Pretextual.

### A. Miller's Similarly Situated Female Colleague Faces No Adverse Employment Action for Identical Conduct.

27. On October 28, 2024, Miller began employment as America's Director of Finance.

28. On December 5, 2024, Miller was called into a meeting with executives Mark Swaby, Nate Daily and Ryan Wheaton.

29. The America executives expressed satisfaction with Miller's job performance, told Miller that he was a valued member of the executive team, and asked him about his plans for the finance and accounting department over the next year.

30. On December 6, 2024, at approximately 10:00 a.m., America executive Nate Daily informed Miller that he could move into a different office the next business day due to the departure of another employee from the company.

31. Later on December 6, at approximately 1:00 p.m., Daily instructed Miller to download WhatsApp to facilitate private communications among him, Miller and their Australia colleagues.

32. Later on December 6, at approximately 3:30 pm, Daily and Wheaton called Miller into a meeting to inform him that he was being terminated effective immediately.

33. Daily and Wheaton refused to provide a reason for Miller's termination.

34. On December 12, 2024, Mark Swaby told Miller via email that "[y]ou were terminated because the company discovered that your CPA license had previously lapsed (a concern for any company hiring someone to perform accounting work)."

35. Although Miller's CPA license had expired in 2014, he reinstated the license in 2020.

36. Miller's CPA license was active with full privileges throughout the time that he interviewed for and was employed as Director of Finance for Gym and Fitness, Inc.

37. Gym and Fitness, Inc. did not ask Miller about the history of his CPA license

during the interview process.

38.     Moreover, beginning in approximately 2017 and continuing until the time of Miller's employment, Gym and Fitness, Inc. employed a female, "Ms. Smith," as the head of its finance and accounting department.

39.     Ms. Smith's job duties and responsibilities were largely identical to Miller's.

40.     The supervisors to whom Miller reported were the same supervisors to whom Ms. Smith reported prior to Miller's employment.

41.     On December 13, 2024, Miller responded to Mark Swaby's email by demonstrating that Ms. Smith's CPA license expired in 2014 and had not been reinstated.

42.     Miller further demonstrated that Ms. Smith actively marketed herself as a "CPA for Hire" despite not being a CPA.

43.     Defendants continued to employ Ms. Smith as the head of America's finance and accounting department after Miller's termination.

   **B.     Gym and Fitness, Inc. Executive Mark Swaby Lies to a Government Investigator without Consequence.**

44.     In his December 12, 2024 email to Miller, Mark Swaby also suggested that Miller was terminated because he "lied to the investigator conducting the investigation for the state of Utah regarding [his] CPA license."  Here, Swaby referred to alleged events that occurred approximately ten years earlier.  Swaby then informed Miller that "[t]he company would never continue to employ someone who has a history of dishonesty, including as it relates to government investigators."

45.     After his termination, Miller applied for unemployment insurance benefits.

46.    Defendants challenged Miller's unemployment benefits claim.

47.    According to the March 12, 2025 report of a DWS investigator, Swaby reported that Gym and Fitness, Inc. confronted Miller with the lapse in his CPA license when terminating him on December 6, 2024.

48.    However, Swaby would later admit under oath during an April 3, 2025 hearing before an administrative law judge that "no reason was given at the time" of Miller's December 6, 2024 termination.

49.    During the hearing before the administrative law judge, Swaby also testified that Miller's "job performance was adequate."

50.    Swaby's false statement to the DWS investigator about the events of December 6, 2024 created the impression that Defendants gave Miller an opportunity to explain his version of events regarding the lapse in his CPA license before terminating his employment.

51.    Despite Swaby's December 12, 2024 written declaration to Miller that "[t]he company would never continue to employ someone who has a history of dishonesty, including as it relates to government investigators," Defendants have not taken adverse action against Swaby's employment in response to the dishonest account of Miller's termination that he provided to the DWS investigator.

52.    Swaby's false statements to the DWS investigator resulted in the initial denial of Miller's claim for unemployment insurance benefits.

53.    However, both the administrative law judge and Utah Workforce Appeals Board

7

eventually ruled in Miller's favor on his unemployment benefits claim after Swaby informed the administrative law judge that "no reason was given" to Miller on the date of his termination.

54. Mark Swaby is a Canadia citizen born in Canada.

55. On information and belief, Swaby lives and works in the United States under an immigration visa.

56. Miller is a U.S. citizen born in the United States.

### C. Defendants Pivot to an Equally Pretextual Justification and Repeat Their Lies to Antidiscrimination Investigators.

57. In April 2025, Miller filed a complaint against Net Media Group with the Utah Labor Commission, Antidiscrimination and Labor Division ("UALD").

58. Over the course of the UALD investigation, Net Media Group (consistently identifying itself as "Gym and Fitness, Inc.") developed an alternative justification for Miller's termination.

59. In a September 2025 document submitted to UALD, Net Media Group claimed that

> "we received a call from our liaison at our accounting firm, ["Tax Advisors"], on December 6, 2024 stating they were forced to recuse themselves from working with us. The reason given was we had recently employed Greg Miller as our Director of Finance and due to previous dealings with Mr. Miller—for unspecified reasons—they could no longer offer us disinterested professional services."

60. But instead of questioning Miller about his "previous dealings" with Tax Advisors, asking Miller for insight into Tax Advisor's "unspecified reasons" for refusing to work with him, or affording Miller an opportunity to resolve any conflict that may have

8

existed between him and Tax Advisors, Defendants responded to Tax Advisor's alleged December 6, 2024 phone call by summarily terminating Miller that same day.

61. As shown above, Miller's December 6 termination occurred within hours of Defendants' executives signaling their commitment to his continued employment by indicating that he would be moving into a different office and instructing him to download an app to facilitate private communications among Miller, Defendants' executives and their Australia colleagues.

62. Further, Miller's termination occurred within one day of Defendants expressing their satisfaction with his job performance and signaling their commitment to him for the next year.

63. Moreover, Miller worked directly and amicably with Tax Advisors during his employment *immediately preceding* his tenure as Defendants' Director of Finance.

64. In their September 2025 submission to the UALD, Defendants reverted to their deception perpetrated on the DWS investigator by asserting:

> "It was the strong belief of management that Mr. Miller could potentially become violent during notification of termination…Given this concern…we informed him that his termination was due to issues with his CPA license…"

65. The UALD relied on this misrepresentation in ruling against Miller, stating in its October 2025 Determination and Order:

> "[Net Media Group] has explained that it attempted to give a brief explanation for his termination, stating that it was based on issues with his CPA license, as it believed not going into details with its discovery would be safer and less provoking."

66. However, as shown above, Mark Swaby admitted under oath during an April 3,

9

2025 hearing before an administrative law judge that "no reason was given at the time" of Miller's December 6, 2024 termination.

### III.   Miller's Complaint Is Properly Filed.

67.   On December 6, 2024, Defendants terminated Miller's employment.

68.   On April 11, 2025, Miller timely filed a complaint with the UALD.

69.   On October 3, 2025, the UALD issued a Determination and Order.

70.   By notice dated December 11, 2025, the U.S. Equal Employment Opportunity Commission ("EEOC") issued a "Notice of Your Right to Sue" informing Miller that "your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice."

71.   Miller received the EECO notice by U.S. mail several days after December 11, 2025.

72.   Accordingly, the present complaint is properly and timely filed in this Court.

<u>**FIRST CAUSE OF ACTION**</u>
**- Discrimination Based on Gender in Violation of Title VII –**
**(Against All Defendants)**

73.   Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

74.   Plaintiff satisfactorily performed the functions of his job at all times relevant to this Complaint.

75.   Defendants either directly or by and through their agents, discriminated against Plaintiff because of his gender.

76.   Specifically, Plaintiff was discriminated against and treated in a differential

manner by Defendants because he is male.

77.     In particular, Defendants engaged in disparate treatment of Plaintiff from a similarly situated female employee with respect to prior lapses in their CPA licenses.

78.     Defendants summarily terminated Miller's employment upon learning that his CPA license had lapsed for a period of time prior to his employment, and despite Miller's CPA license being fully reinstated without restriction throughout his employment.  By contrast, the CPA license of Miller's similarly situated female colleague was expired throughout the entirely of her employment by Defendants, yet Defendants took not adverse action against her employment in response.

79.     Plaintiff's female colleague was not subjected to the scrutiny, criticism, discriminatory treatment or termination to which Plaintiff was subjected based on his gender.

80.     Defendants are liable for the acts and omissions of their agents and employees.

81.     Defendants' unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

82.     As a consequence of Defendants' illegal conduct, Plaintiff suffered, and continues to suffer, irreparable injury and damages.

### SECOND CAUSE OF ACTION
**- Discrimination Based on National Origin in Violation of Title VII –
(Against All Defendants)**

83.     Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

84.     Plaintiff satisfactorily performed the functions of his job at all times relevant to this Complaint.

85.     Defendants either directly or by and through their agents, discriminated against Plaintiff because of his national origin.

86.     Specifically, Plaintiff was discriminated against and treated in a differential manner by Defendants because he is of American origin.

87.     In particular, Defendants engaged in disparate treatment of Plaintiff from a similarly situated employee of Canadian origin with respect to false statements allegedly provided to government investigators.

88.     After Defendants summarily terminated Miller's employment upon discovering allegedly false statements that Miller made to a Utah state investigator nearly ten years before his employment, Defendants' employee and executive Mark Swaby made false statements to the DWS investigator who processed Miller's claim for unemployment insurance benefits.  A few months later, in a written statement submitted to a UALD investigator, Defendants, including Swaby, repeated Swaby's false statement to the DWS investigator.

89.     Defendants summarily terminated Miller's employment upon discovering his allegedly false statement to a Utah state investigator.  By contrast, Defendants took no adverse action against the employment of Mark Swaby in response to his false statements to two different Utah state investigators.

90.     Plaintiff's Canadian colleague was not subjected to the scrutiny, criticism,

discriminatory treatment or termination to which Plaintiff was subjected based on his national origin.

91. Defendants are liable for the acts and omissions of their agents and employees.

92. Defendants' unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

93. As a consequence of Defendants' illegal conduct, Plaintiff suffered, and continues to suffer, irreparable injury and damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Gregory Miller prays for a judgment against Defendants Gym and Fitness, Inc., Gym and Fitness, Co., and Net Media Group, LLC as follows:

1. For an award of back pay as permitted by law;

2. For an award of front pay as permitted by law;

3. For an award of compensatory damages for suffering, mental anguish, inconvenience, and loss of enjoyment of life;

4. For an award of punitive damages to deter Defendants' conduct as described in this complaint as permitted by law;

5. For an award of attorney fees, costs and pre-judgment interest as provided by law; and

6. For an order that Defendants are jointly and severally liable for Miller's damages; and

7.      For other relief as the Court deems proper and just.


DATED this 10th day of March 2026.


/s/ *Gregory Miller*

Gregory Miller
Plaintiff